IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DORN ALLEN FREEMAN,

    Petitioner,      No. CIV S-07-1898 LKK CHS P

  vs.

M. S. Evans,

    Respondent.      FINDINGS AND RECOMMENDATIONS
_____/

I. INTRODUCTION

Petitioner Dorn Allen Freeman is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. At issue is his 2005 judgment of conviction for corporal injury of a former co-habitant, entered after jury trial in the Shasta County Superior Court, case number 03F08925. Petitioner alleges that his conviction is unconstitutional due to prosecutorial misconduct and ineffective assistance of counsel at trial. For the reasons that follow, petitioner is not entitled to relief on his claims.

/////
/////
/////
/////

1

## II. BACKGROUND

The following facts, including footnotes, were set forth in the unpublished opinion of the California Court of Appeal, Third District, case number C049939. (Lodged Document 3.)

> Sometime in 2003, defendant and W.P. entered into a romantic relationship in which they shared a residence in Cottonwood. After six to eight months, in October 2003, the relationship ended and defendant moved out.
>
> From October 2003 to February 19, 2004, defendant made "almost daily" unwanted contact with W.P. She would ask him to leave, her friends would ask him to leave, and her employer would ask him to leave her workplace. She had to start calling the police. In February 2004, she sought a restraining order against him.
>
> On the evening of February 19, 2004, W.P. was playing a slot machine at a local casino. Unexpectedly, defendant approached her from behind and asked to talk to her. She agreed to talk with him and they proceeded to a restaurant in the casino. After they placed their order at the restaurant, she advised him that her daughter expected her home. At her suggestion, they got their food "to go."
>
> Defendant asked W.P. for a ride home. She agreed to transport him provided that he agree to leave her daughter alone. They entered her car and she drove toward Anderson. When they neared his place of employment, he asked her to pull over and explained that he had left his truck at that location. She turned onto a tree-lined access road and stopped at a gate. He got out of the car and she inquired, "What are we doing? I thought you were here to pick up your car." He responded that he had to urinate. After urinating, he grabbed her by the hair and dragged her from the driver's seat to the passenger seat. She screamed, "What are you doing this for?" and he told her to shut up. He entered the car on the driver's side and began driving.
>
> Defendant activated the car's power locks so that W.P. could not open a door. She repeatedly tried to unlock her door and he repeatedly locked it. He was "very angry" and kept elbowing her in the face. He also tried to pin her with his arm to prevent her from reaching the car keys or the steering wheel.
>
> At some point defendant stopped the car, removed the belt from W.P.'s clothing and tried to bind her wrists. When she succeeded in freeing her hands he again stopped the car, removed the belt from his own clothing and bound her wrists with both belts. Unable to use her hands, she started kicking him. She was then able to lodge her foot in the steering wheel and overpower his ability to turn the car.

When the car stopped, W.P. unlocked the door and rolled out of the car. She removed the belts, screamed for help and ran. Defendant tackled her and shoved her onto the asphalt. A couple was driving by and observed defendant on top of W.P. with his hands around her throat apparently attempting to choke her. The motorists honked their horn in an effort to get him to stop and called 911. Shortly thereafter, defendant fled from the scene. W.P. ran toward the motorists who had heard her cries for help and stopped to render assistance. W.P. told them that defendant was trying to kill her.

W.P. sustained bruising to her face in the area of her eyes, nose, neck and wrists. Her lips were swollen and she sustained scrapes on her sides. Her knee had a deep injury and she was unable to work for a week.

The defense rested without presenting evidence or testimony.

(C049939 opinion at 1-2)

### III. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

The "contrary to" and "unreasonable application" clauses of §2254(d)(1) are different. Under the "contrary to" clause of §2254(d)(1), a federal court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405. As the Third Circuit has explained, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo v. Superintendent*, SCI *Albion*, 171 F.3d 877, 888 (3rd Cir. 1999) (en banc) (emphasis in original). The state court is not required to cite the specific controlling test or Supreme Court authority, so long as neither the reasoning nor the result of the state court decision contradict either. *Early v. Packer*, 537 U.S. 3, 8-9 (2002).

The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. *Williams*, 529 U.S. at 410. The focus of this inquiry is whether the state court's application of clearly established federal law is objectively unreasonable. *Id*. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*.

This court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003). If relief is precluded by 28 U.S.C. §2254(d), the court may deny the petition without addressing the merits of the claim. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

/////

IV. ANALYSIS OF THE CLAIMS

A. Ineffective Assistance of Counsel

Petitioner alleges that he received ineffective assistance of counsel at trial. This claim was first presented in state court habeas corpus proceedings (Lodged Docs. 7, 9, 11 & 13) and denied at all levels. (Lodged Docs. 10, 12 & 14.) The California Supreme Court cited *In re Swain*, 34 Cal.2d 300, 304 (1949) and *People v. Duvall*, 9 Cal.4th 464, 474 (1995) in its brief written decision. (Lodged Doc. 14.) These citations indicate that the California Supreme Court denied the claim because it was not alleged with sufficient particularity. *Kim v. Villalobos*, 799 F.2d 1317, 1319 (9th Cir. 1986). Since there is no reasoned decision from the state courts, this court must independently review petitioner's claim. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

A showing of ineffective assistance of counsel has two components. First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). After the acts or omissions that are alleged not to have been the result of reasonable professional judgment are identified, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (*quoting Strickland*, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

The second factor required for a showing of ineffective assistance of counsel is actual prejudice caused by the deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.; *see also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

In this case, petitioner states that his attorney "called no witnesses and presented no defense" at trial. (Petition at 5.) His allegations about counsel's deficient performance may be summarized, generally, as follows: (1) counsel failed to object to the admission of the prosecution's exhibits; (2) counsel failed to move to exclude petitioner's statements which were obtained without advising him of his *Miranda* rights; (3) counsel failed to obtain video surveillance tapes from the casino showing petitioner and the victim on the night of the offenses; and (4) counsel failed to interview and/or subpoena for trial potential witnesses including former Shasta County Deputy Sheriff Greg Dean, Patrol commander Rod D'Cornia, and Christina Riley.

With respect to the prosecution exhibits at issue, petitioner alleges that his attorney was ineffective due to his "failure to object in [trial] on admission and investigate People's exhibits, #2, A, B, & C (Color Photos)..." (Petition at 8.) He later asserts that these exhibits constituted "false documentary evidence" (Petition at 32), but does not explain how they were false. Elsewhere, petitioner implies that physical evidence at the scene was altered before Deputy Dean took photographs, but again he does not explain himself further.

At trial, the photographs were properly authenticated by Deputy Thompson before being admitted into evidence. (RT at 118-120.) Petitioner's allegations about counsel's performance regarding the alleged falsity of the prosecution's exhibits are vague and conclusory, and thus insufficient to raise a cognizable claim of ineffective assistance of counsel. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (conclusory allegations that counsel provided ineffective assistance "fall far short of stating a valid constitutional violation" (*citing James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th cir. 1970) ("[a]llegations of fact, rather than conclusions, are required"). Upon the record of this case, there appears no basis for counsel to have moved to exclude these exhibits from evidence. Thus

counsel had no duty to make such a motion.  *See James*, 24 F.3d at 27 (counsel has no duty to make futile motion).

       Petitioner's allegation that counsel should have objected to the introduction of his statements to police because his *Miranda*[1] rights were not administered is also without support in the record.  Petitioner asserts that "Miranda warning was not administered, when voluntry (sic) interrogation, became a custodial interrogation." (Petition at 10.)  It is clear from the transcript of the interview, however, that petitioner went to law enforcement voluntarily to give a statement.[2]  (CT at 123.)  Petitioner does not explain how his statement became "custodial" at any point.  Rather, it was made perfectly clear to him by the interviewing detective that he was not under arrest, and that he was free to go home when he finished giving his statement.  (CT at 148.)  Petitioner's allegation that counsel should have moved to exclude his statements based on the lack of a *Miranda* warning is conclusory and unsupported by any facts.  Moreover, counsel had no duty to make a futile objection.  *See James*, 24 F.3d at 27.

       Turning to the video surveillance tapes at issue, petitioner alleges that "it was crucial to obtain video [surveillance tapes] of February 19, 2004 from Winn-River casino, crucial as to showing victim's sobriety, also the victim and petitioner's demeanor- most importance of victim driving in parking lot of casino, and running into numerous curbs, when leaving with petitioner, and why acts to prevent harm were a necessity to prevent a greater harm!" (Petition at 7.)  Along these lines, petitioner asserts that he was only trying to protect the victim from herself when he took control of her car that night.

       The victim testified that she consumed three beers while at the casino and then left voluntarily with petitioner to give him a ride home.  Thus, there was undisputed evidence before

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Petitioner had concocted a story that he had been "set up" by the victim and attacked by others when he stepped out of the car to get a beer from the trunk, however, he admitted that the story was not true after the interviewing detective apparently convinced him that it was not believable.  (CT at 124-180.)

7

the jury that the victim had consumed alcohol and left voluntarily with petitioner. Surveillance tapes of petitioner and the victim leaving together would not have added anything material to petitioner's defense. Defense counsel argued in closing arguments that the victim was possibly intoxicated (RT at 252), and pointed out the importance of the fact that she voluntarily left with petitioner to give him a ride home. (RT at 251.) Under these circumstances, it does not appear that defense counsel's failure to obtain and introduce video surveillance from the casino showing petitioner and the victim leaving together was unacceptable professional judgment.

Petitioner has also failed to demonstrate that counsel exercised unacceptable professional judgment in relation to the potential witnesses not called at trial. Petitioner alleges that former Deputy Dean was the first police officer to respond to the scene after he fled.[3] Dean interviewed the victim, took photographs, and filled out a police report. (RT at 124.) Petitioner alleges that Dean's photographs showed "intentional alteration of physical matter at the scene [ ] as to skid marks made by the victim's car and accurately showing the directional course of travel," but does not elaborate further on this point. (Petition at 6-7.) According to petitioner, Dean subsequently came to the Shasta County jail where petitioner was being held and told him that he did not believe all of the victim's statements in his report to be true. (*Id*.) Dean was subsequently fired from the Shasta County police department following a grand jury indictment for manslaughter. *Id*. Petitioner contends that he asked counsel to subpoena Dean, or, in the alternative, Patrol Commander D'Cornia, to testify at trial. (Petition at 7.) Petitioner alleges that D'Cornia "knew the details of the case, from the beginning to the end, and legal course of action, for the petitioner to take." (Petition at 9.) Finally, with respect to potential witness Christina Riley, petitioner alleges that she "had been with petitioner, and drove [him to the casino], and saw [injuries] to petitioner crucial to his defense." (Petition at 7.)

---

[3] Deputy Tyler Thompson testified at trial that he was the first law enforcement officer to arrive on the scene, as opposed to Deputy Dean, and that Dean arrived "a couple of minutes" later. (RT at 124.)

It remains unclear, from petitioner's confusing allegations, exactly what these three witnesses could have contributed to his defense. For example, petitioner mentions Dean's photographs of skid marks depicting the direction of travel but does not explain why the direction of travel was significant. He does not state exactly what Dean and/or D'Cornia could have testified about, and he does not provide any details about the alleged injuries he suffered that were "crucial to his defense." Overall, petitioner's allegations about counsel's failure to call these witnesses are again vague and conclusory, and insufficient to raise a cognizable claim of ineffective assistance of counsel. *See Jones*, 66 F.3d at 204; *James*, 24 F.3d at 26; *Boehme*, 423 F.2d at 1058.

Moreover, in the absence of any meaningful evidence that Dean, D'Cornia, and Riley actually had knowledge or information that would have been helpful to the defense, it must be assumed that counsel's decision not to call them as witnesses was a matter of strategy or tactics.[4] *See generally United States v. Oplinger*, 150 F.3d 1061, 1072 (well-advised decision not to call witness, despite client's desire that the witness testify, does not constitute ineffective assistance of counsel); *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999) ("Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial); *Hughes*, 898 F.2d at 702 (*citing Strickland*, 466 U.S. at 689) (there exists a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made").

/////

---

[4] Indeed, defense counsel stated to the Court that Dean's testimony was not critical to the defense: "Your Honor, there is an issue that my client has asked that I place on the record regarding Deputy Dean. That issue is that at this point, I've still been unable to serve Deputy Dean or former Deputy Dean with a subpoena. [¶] Strategy-wise, I am of the opinion that Deputy Dean is not crucial to either the rebuttal or the Defense's case in chief, should there be any. My client and I have fundamental disagreement on that. He wanted the record clear that he believes Deputy Dean's testimony is important. He believes Deputy Dean's impeachment or possible impeachment with his manslaughter issue would be relevant and-- crucial to the case. [¶] ...I just want at least to make the record clear that my client and I have that disagreement." (RT at 183.)

In any event, petitioner cannot show the prejudice required for a cognizable claim of ineffective assistance of counsel with respect to any of counsel's alleged deficiencies. Substantial evidence of petitioner's guilt was presented at trial. An eyewitness heard a female yelling for help, saw a man on top of the female, and testified that the man appeared to be choking her. (RT at 88-90.) The victim described in detail how petitioner restrained her in the passenger seat, drove the car, and inflicted multiple injuries. (RT at142-53.) The jurors saw photographs of injuries that were visible on the victim shortly after the incident. (RT at121, 127-28.) The jurors also heard petitioner's voluntary admissions made to law enforcement several days later. (RT at 179.) This evidence allowed the jury to find him guilty after just twenty minutes of deliberation. (CT at 314-15.) The speed at which the jury reached its verdicts is a factor properly considered for the prejudice inquiry of a claim of ineffective assistance of counsel. *See Mayfield v. Woodford*, 270 F.3d 915, 926 (9th Cir. 2001) (en banc) (the "brevity of the jury's deliberations" was a factor indicating that counsel's performance "did not alter the jury's finding determination of guilt"). Based on the evidence introduced by the prosecution, it cannot be said that there is a reasonable probability that the result of the trial would have been different, but for counsel's omissions. Petitioner is not entitled to relief on his claim that trial counsel rendered ineffective assistance.

B. Prosecutorial Misconduct

Petitioner's second ground for relief is that the prosecutor allegedly engaged in misconduct. (Petition at 5.) The standard of review for prosecutorial misconduct is "the narrow one of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). According to the Supreme Court, "the touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). A federal court sitting in habeas corpus must distinguish between "ordinary error of a prosecutor and that sort of egregious misconduct" that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643, 47-48 (1974). Due process violations warranting federal intervention are found "only where criminal trials in state courts are conducted in such a manner as amounts to a disregard of that fundamental fairness essential to the very concept of justice that due process is offended." *Pike v. Dickson*, 323 F.2d 856, 860 (9th Cir. 1963). In addition, to prevail on a claim for habeas relief based on trial error, a petitioner must establish "actual prejudice," that is, that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

Here, petitioner has failed to demonstrate that the prosecutor committed any misconduct, let alone prejudicial misconduct warranting relief. First, petitioner's vague accusations about the prosecutor knowingly introducing false evidence are wholly conclusory, unsupported by specific factual allegations, and thus an insufficient basis for relief. *See Jones*, 66 F.3d at 204; *James*, 24 F.3d at 26; *Boehme*, 423 F.2d at 1058. Second, petitioner's confusing allegation that the prosecution intentionally suppressed a February 27, 2004 report does not appear to be significant as, according to petitioner's exhibits, the report at issue is one he created himself and submitted to police. (See Petition at 68-69.) Petitioner has not shown that the prosecution actually withheld anything from discovery, and thus has not shown misconduct. *Cf. Middleton v. Roper*, 455 F.3d 838, 853-54 (8th Cir. 2006) (*cert. denied* , 127 S. Ct. 980 (2007) (claim of undisclosed deal supported only by speculation); *see also Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) (petitioner not entitled to explore *Brady* claim characterized as "mere suppositions").

Finally, petitioner has failed to show that the prosecution interfered with the defense's attempts to call former Deputy Dean to testify at trial. Petitioner's allegations center around the prosecutor's statement that Dean was "avoiding any type of subpoenas from Prosecution and Defense" (RT at 38) and the prosecutor's expressed concern that Dean's testimony might present Fifth Amendment issues. (RT at 38-40.) Once again, the allegations are without support in the record. It appears that Dean did not testify because the defense was unable

to serve him with a subpoena (RT at 183, 202), and because counsel believed that "Deputy Dean is not crucial to either the rebuttal or the Defense's case in chief, should there be any. My client and I have a fundamental disagreement on that." (RT at 183.) Petitioner has not shown any misconduct on the part of the prosecutor, and is not entitled to relief on his claim of prosecutorial misconduct.

## V. CONCLUSION

For all the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 14, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE